CHARLES S. MORRIS et al. *v.* BOARD OF PILOT COMMIS-
SIONERS, a Corporation of the State of Delaware,
et al.

New Castle, September Term, 1894

Pilots — board of commissioners of; Powers — what may be
implied, and what must be expressed in the act; Can-
not forfeit licenses without giving opportunity for
hearing; May make rules, but not orders; Distinction
between; Power of the board over the boats;
What are combinations to prevent pilots from
performing their duties — equity will enjoin when an
indefinite revocation of a license is illegally ordered.

1. A refusal by a number of pilots who own and operate
their own pilot boat, and who have the boat properly
manned and equipped to render good service, to allow a
pilot designated by the pilot commissioners to cruise on
her, is not a combination to prevent a person from
executing the duties of a pilot within act of April
5, 1881, providing for the forfeiture of the license if a
pilot enter into such a combination.

2. The act of April 5, 1881, and its supplements, creating the
Board of Pilot Commissioners and empowering it to for-
feit the license of any pilot entering into a combination
to prevent another pilot from discharging his duties,
requires that the party charged with such a combina-
tion shall have an opportunity of being heard; and no
order or decree of the board before conviction and after
opportunity given for hearing, shall work such a for-
feiture; nor is an order of the board inflicting as a pen-
alty for such a combination an indefinite revocation of
the license, lawful, it being the first offense alleged and
the statute expressly providing a forfeiture for three
months only in such a case.

3. The power vested in the Board of Pilot Commissioners to make rules for the government of pilots, and to decide differences, carries with it the incidental power to enforce the same by the imposition of reasonable pecuniary penalties, without any express grant of power to that effect. But the right to inflict a forfeiture as a penalty, must be plainly given, and cannot be derived from usage or raised by implication.

4. Pilot boats, though owned and managed exclusively by certain of the pilots, are to a certain extent dedicated to the public service, and the private property rights of their owners must be made subservient whenever the public good requires it, but no further. The Board of Pilot Commissioners has, therefore, the implied right to make such rules and regulations concerning boats in the service as would be conducive to the general interest, but not otherwise; and the allotment by the board of a pilot to a boat already properly manned and equipped is without its power.

5. Under the clause authorizing the Board of Pilot Commissioners "to make rules for the government of pilots," etc., the orderly course of procedure is to make general rules in pursuance of that power, and the assignment of a pilot to one of the boats in the pilotage service without having first made a general rule on the subject, partakes of the nature of an order and not a rule and is not within the terms of the act.

6. The words "rule" and "order," when used in a statute, have a definite significance. They are different in their nature and extent. A rule, to be valid, must be general in its scope and undiscriminating in its application; an order is specific and limited in its application. The function of an order relates more particularly to the execution or enforcement of a rule previously made.

7. The Court of Chancery will enjoin the Board of Pilot Commissioners from revoking a license where the ground upon which the revocation is threatened is not one specifically provided for by the statute creating the board.

8. While the general doctrine is that equity may relieve against forfeitures declared by contract but not against those declared or unauthorized by statute, yet when they are not expressly declared or authorized, equity will relieve by the interposition of its injunctive power.

INJUNCTION BILL.— Action by Charles S. Morris and others against the Board of Pilot Commissioners to enjoin the defendants from revoking the plaintiffs' licenses. A full statement of facts will be found in the opinion of the Chancellor.

Bradford & Vandegrift, for complainants.

There is no justification or excuse for the attitude assumed by the Board of Pilot Commissioners in this case. It is unreasonable and arbitrary in the last degree and in utter disregard of the rights and interests of property-owners.

The boat Thomas Howard is not the property of the State of Delaware or of the Board of Pilot Commissioners, whatever may be said upon the subject of the police powers of the State or of the doctrine of the case of Munn v. Illinois, 94 U. S. 113.

In respect to the doctrine of police power and the affecting of private property with the public use, something will be said later; but the admitted facts show conclusively how utterly unreasonable is the proposed action of the Board of Pilot Commissioners in this case.

No complaint has been made by the board or by anyone that the boat Howard is not successfully, properly and diligently managed in the pilotage business, or that the said boat is not well equipped and manned, or that it has not a sufficient number of pilots to fully and satisfactorily perform its duty as a pilot vessel.

On the contrary, the Board of Pilot Commissioners, through its general demurrer, admits without qualification the statement contained in the bill of complaint as amended, " that at the time of the said application of the said John B. Merritt to the said Board of Pilot Commissioners, as aforesaid, and ever since, and now, the pilot boat Thomas Howard was, has been, and is well and sufficiently manned with duly-licensed pilots for the full and satisfactory performance of its duties as a pilot boat."

The board further admits the allegation that " the sole object of the said defendant in insisting that the said Merritt should be received upon the said Howard as aforesaid, was to give employment to the said Merritt as pilot, to the end that he might render pilotage service; the said Merritt not then being employed upon any pilot boat."

The board further admits the allegation that " there was much unwillingness on the part of the Delaware pilots employed on the several pilot boats, then in service on the bay and river Delaware, to receive the said Merritt to cruise as a pilot on anyone of said pilot boats; and the said defendant, the Board of Pilot Commissioners, finally determined by lot whether the said Merritt should be received as pilot on the said boat Thomas How-

ard, or another of said boats named Thomas F. Bayard; and the said boat Howard having been so determined upon by lot, the said defendant insisted as aforesaid that the said Merritt, against the will and consent of a majority of the owners of the said boat Howard as aforesaid, should be received to cruise upon said boat as aforesaid."

The authority of the board clearly does not extend to the placing of Merritt on board of the Howard against the will of its owners, or to the threatened revocation of their licenses for refusing to receive Merritt under the circumstances disclosed in the case.

The authority of the board is statutory, and is, 1st. To " grant licenses to persons to act as pilots in the bay and river Delaware."    2d. To " make rules for their government while employed in that service;" and 3d. To " decide all differences which may arise between masters, owners and consignees of ships or vessels and pilots, except in cases hereinafter excepted."    16 Del. Laws, 494.

Applicants for pilot's licenses are compelled to pass an examination to determine their fitness, and licenses when granted " shall be in force for one year from the date thereof until pilots respectively shall next after the expiration of the year arrive with any ship or vessel at any port," etc.    16 Del. Laws, 495.

It is further provided that if any pilot shall for two weeks unlawfully neglect to execute a pilot's duties, he shall forfeit his license; and further, that if any pilot shall enter into any combination with the view of preventing any pilot from executing his duties, the license of the former shall be forfeited.    16 Del. Laws, 496.

In this case, there is no neglect on the part of the owners of the Howard to execute their duties as pilots. Indeed, the contrary appears upon the facts admitted by the demurrer.   Nor is there any suggestion in the records of any combination on the part of any of the owners of the Howard to prevent Merritt from exercising a pilot's functions.

It has been argued that the power " to make rules for their government while employed in that service," includes that authority.   But it is submitted that any such construction of the statute would be most unreasonable and clearly improper.

Such a construction must not be put upon the power as would render its exercise not only altogether arbitrary, but also violative of the rights of property of vessel owners.

No such authority, conflicting as it would with one's exercise of his rights of property, can be held to exist, unless under the exercise by the State of its police power, or under the doctrine of dedication as laid down in the case of Munn v. Illinois, 94 U. S. 113.

With respect to the doctrine of Munn v. Illinois, it is enough to say that that doctrine is wholly without application in the present case.   While it is true that the owner of property, by putting it into public use, may so far dedicate it to the public as to forbid discrimination with respect to its use, as between different members of the public, so long as it continues to be used by the public, there is no principle recognized in that case, or in any case decided by any intelligent tribunal, which will

compel the owner of property to permit others to force themselves into a partnership or *quasi* partnership relation with him against his will, to carry on the enterprise on which he has embarked.

The contention on the part of the solicitors for the defendant that because the employment of a vessel as a pilot boat is a public service, the owners of the boat are compelled to take, against their will, other pilots on board their boat unnecessarily, is just as absurd and illogical as to have contended in Munn v. Illinois, that the warehouseman must not only serve the public indifferently at prescribed rates, but must also, against his will, associate with him in carrying on his business, any person that said board of commissioners might see fit to impose upon him.

What the court held in Munn v. Illinois was, that so long as the warehouseman maintained his warehouse as a public building, he must serve the public indifferently according to prescribed rates; and that to that extent he had dedicated his building to public use.

Then if the doctrine of Munn v. Illinois does not apply to the case, the authority, if it exists at all, must be embraced in the exercise of the police power.

If the Legislature had ever had in contemplation the authority contended for by the solicitors for the defendant, it is inconceivable why it should have omitted to expressly provide for the control, regulation or ownership of vessels employed in the pilotage service. Absolutely no reason entitled to any weight has been advanced to justify the contention on the part of the defendant. The defendant's solicitor contended that if

the owners of a pilot vessel had the right to decline to receive a stranger coming to cruise on their vessel as a pilot, the shipping interests would be largely at their mercy, because they, by preventing competition among · pilots, could raise the rates of pilotage.

The conclusive answer to this objection is found in the fact that the pilotage rates are wholly beyond the power of pilots to alter or change in any respect, being expressly declared and fixed by section 18 of the Act creating the Board of Pilot Commissioners.    16 Del. Laws, 499.

The authority of the board to decide all " differences which may arise between masters, owners and consignees of ships or vessels, except in cases hereinafter excepted" has no application, it is submitted, to a case like the present for the reason that the proviso at the end of section 1 of the Pilotage Act (16 Del. Laws, 494) clearly shows that the differences referred to are disputes with respect to moneys claimed as between masters, owners and consignees of ships or vessels on the one hand, and pilots on the other.

Even if the appeal provided for in the Pilotage Act could be considered as applicable to a case like the present, such appeal would be only a cumulative remedy and not exclusive of the jurisdiction of this court. Sutherland on Statutory Construction, § 399.

But the provision relating to the appeal is that " on such appeal the like security shall be entered and the like proceedings had as in the case of an appeal from the judgment of a justice of the peace for a debt or demand not exceeding $100."

As already stated, this statutory remedy was evidently intended to apply only to the cases of pecuniary demands.    Otherwise the provision as to security as in case of a debt not exceeding $100, would be altogether unmeaning.

The provisions conferring upon the Board of Pilot Commissioners authority to make rules for the government of pilots, while employed in the pilotage service, must receive a reasonable construction.

There is a well-settled distinction between acts of a Legislature authorizing the doing of unreasonable things, and an ordinance, rule or by-law of a board of public officers or of a municipality while undertaking to act under a power generally conferred upon any given subject, to do unreasonable things.

In the former case, the action will be supported unless it violates some constitutional provision; but in the latter case, the action of the municipality or board will not be supported, but will be declared invalid and void as unreasonable.    1 Dillon on Municipal Corporations, §§ 319, 328; Site v. Murphy et al., 49 Ohio St. 536; Clinton v. Philips, 58 Ill. 102; Commonwealth v. Turner, 1 Cush. 493; Trustees of Schools v. People, 87 Ill. 303; Dayton v. Quigley, 23 N. J. Eq. 77; Barling v. West, 29 Wis. 307.

L. C. Bird, for defendant.

The question to be decided in this case is, whether the Board of Pilot Commissioners, a corporation created by an act of the Legislature of the State of Delaware, had a right to make and enforce a rule directing that

one John B. Merritt, a pilot duly licensed by said board to be allowed to cruise upon the pilot boat Thomas Howard; said pilot boat being at the time actually engaged in the pilotage service, and whether an injunction will lie in this case.

The respondent claims:

I. The complainants are not entitled to an injunction, since they had an adequate remedy for any supposed grievances provided by section 1 of the act of April 5th, 1881, which provides, " that if any person whomsoever shall conceive himself aggrieved by any decision or penalty made, given and imposed by the said board, such person may, except in the cases hereinafter excepted, within six days appeal therefrom to the Superior Court of either of the counties of this State, and on such appeal, the like security shall be entered, and the like proceedings had as in the case of an appeal from the judgment of a justice of the peace for a debt or demand not exceeding $100." Vol. 16, Del. Laws, 494.

II. The Board of Pilot Commissioners were fully authorized and empowered by the laws of Delaware, to make the rule in question in this suit, and said rule is reasonable and necessary to the pilotage service.

The rule was for the government of the pilots. The act of April 5th, 1881, creating said Board of Pilot Commissioners, provides in section 1, "And the said board of pilot commissioners, three of whom shall be a quorum, when met, shall have full power and authority under the limitations hereinafter prescribed, to grant licenses to persons to act as pilots in the bay and river Delaware,

and to make rules for their government while employed in that service, to decide all differences which may arise between masters, owners and consignees of ships or vessels, and pilots, except in cases hereinafter excepted." Vol. 16, Del. Laws, 494.

The refusal of the complainants to permit the said Merritt to cruise upon the Howard was the result of a dispute between pilots over which, by the said act of Assembly, the Board of Pilot Commissioners have full jurisdiction and control. Vol. 16, Del. Laws, 494. See, also, section 1 of a supplement to the act, entitled "An Act regulating pilots and pilotage of and in the bay and river Delaware." Chap. 555, vol. 17, Laws of Delaware.

The reasonableness of the rule and the wisdom of the Legislature in investing the Board of Pilot Commissioners with authority to make it, is perfectly apparent when we consider the possibility of combinations entered into among certain pilots with a view of preventing other pilots from performing their duties. These combinations are expressly forbidden by section 4 of the act of April 5th, 1881. Vol. 16, Delaware Laws, 496.

Authority by the Board of Pilot Commissioners over the persons and property of pilots while actually engaged in the pilotage service, is absolutely necessary to the efficiency of pilotage service.

III. The laws of Delaware upon the subject of pilotage are in all respects constitutional and valid.

The States have the right to legislate on the subject of pilotage, and the jurisdiction of the several States

over their own pilots is expressly recognized by the act of Congress passed August 7th, 1789.   U. S. R. S. 818, § 4235.

And has been repeatedly affirmed by the Supreme Court of the United States.   Cooley v. Philadelphia Board of Wardens, 12 How. 299; *ex parte* McNeil, 13 Wall. 236.

The acts of Assembly in Delaware in question in this suit are not unconstitutional or invalid on the ground that they destroy, abridge, or interfere with the right of private property.   The State in the exercise of its police powers, in legislating upon the subject of pilotage, has the unlimited right to control not only the persons, but the property of pilots, while engaged in the pilotage service.   The pilot boats actually engaged in the service and necessarily under the control of the pilots who cruise upon them, are essentially a part of the pilotage service.   Without them the service could not exist.

The whole object of the pilot laws, viz.: the creation and fostering of a well and efficient system of pilotage, would be defeated if the Board of Pilot Commissioners created by it did not have the right, by proper rules, to govern and control not only the pilots licensed by it, but also the pilot boats and other property actually used by said pilots in the pilotage service.

In the case of Munn v. Illinois, 94 U. S. 113, the question was, whether an act of the Legislature of the State of Illinois establishing public warehouses, and regulating the shipment and transportation of grain by railroad companies, and the provision of the Constitution of that State regulating the subject, were in conflict with the Federal Constitution.

The Constitution of Illinois provides that " all railroad companies receiving and transporting grain in bulk, or otherwise, shall deliver the same to any consignee thereof, or any elevator or public warehouse to which it may be consigned, provided such consignees, or the elevator or public warehouse, can be reached· by any track owned, leased, or used, or which can be used by such railroad company; and all railroad companies shall permit connection to be made with their track, so that any such consignee, and any public warehouse, coal bank, or coal yard may be reached by the cars on said railroad."

By the act of the Legislature, the warehousemen were licensed, and gave bond to the State, as pilots are required to do by the Delaware act.

The above was clearly an interference with the right of private property, and yet the constitutionality of the law was upheld.    It was held that, " under the powers inherent in every sovereignty, a government may regulate the conduct of its citizens towards each other, and when necessary for the public good, the manner in which each shall use his own property."

At page 133, the court say:    " There is no attempt to compel the owners to grant to the public an interest in their property, but to declare their obligation if they use it in a particular manner."    And at page 125, " Under this power, namely, the police power, a government regulates the conduct of its citizens, one towards another, and the manner in which each shall use his own property, when such regulations become necessary to the public good."

In the case of The State v. Almond, 2 Houst. 612-623, 624, 625, 626, 627, 632, 633, 637 and 638, the defendant was indicted for selling intoxicating liquor contrary to the provisions of the act of the Legislature, entitled "An Act for the suppression of intemperance," passed February 27th, 1855, prohibiting the sale of intoxicating liquors for any other than mechanical, chemical and medicinal purposes, and pure wine for sacramental use, and restricting the right to sell even for such purposes to not more than three persons in each hundred in the State, and five in the City of Wilmington, to be licensed as provided in the act.

The court declared the above statute constitutional and valid, and held that legislative power was an attribute of sovereignty belonging to the people, to be exercised only by their representatives. The extent of the grant of it to the Legislature with its reservations and restrictions, are to be found only in the Constitution itself.

In an able opinion delivered by Harrington, C. J., the court, at page 632, say: "If the higher rights of life, liberty and the enjoyment of property be thus subject to the sovereign power of the State, the power to regulate the use of property to secure the enjoyment of these rights, and to promote the objects for which government is formed cannot be doubted." And at pages 637, 638: "The subjection of private property in the mode of its enjoyment to the public good, and its subordination to public rights liable to be injured by its unrestricted use, is a principle lying at the foundation of government."

An important distinction must be made as to the claim that the Delaware pilotage laws invade the right of private property.

The rule in question in this suit operates directly upon the pilots themselves, not upon their property, or property used or controlled by them.

In Commonwealth v. Alger, 7 Cush. 84, it was held that an act of the Legislature of Massachusetts, establishing lines in the harbor of Boston beyond which no wharf should be extended or maintained, although it took away the right of the proprietors of flats in the harbor beyond the lines to build wharves thereon, and provided for no compensation to the owners thereof, was a valid exercise of the police power.

Shaw, C. J., in delivering the opinion of the court, said: "All property in this Commonwealth is held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in them by the Constitution, may think necessary and expedient. Cooley's Const. Lim. *573.

In Commonwealth v. Tewksbury, 11 Metc. 87, it is held, that a statute which imposes a penalty on any person who shall take, carry away or remove any stones, gravel or sand, from any of the beaches in the Town of

Chelsea, extends to the owners of the soil as well as to strangers, and is not such a taking of private property as to render it unconstitutional and void, although no compensation is provided therein for the owners.

In Trope v. Rutland & B. R. R. Co., 27 Vt. 149, plaintiff brought an action on the case for the killing of his sheep by one of defendant's locomotives, there being no cattle-guards at a farm crossing.   The question in the case was, whether the defendants were bound by the provisions of the General Railroad Act of 1849 to construct and maintain cattle-guards, there being no such obligation imposed upon defendant by its charter. Held, that defendant was bound to provide proper cattle-guards.

The statute does not deprive persons of their property without due process of law.   Slaughter House Cases, 16 Wall. 36; Butchers' Unions Co. v. Crescent City Co., 111 U. S. 746; Grant v. Courter, 24 Barb. 232; Met. Board of Police v. Barrett, 34 N. Y. 667; Stone v. Mississippi, 101 U. S. 814-818; New Orleans Gas Co. v. Louisiana Light Co., 115 id. 650.

Every statute is presumed to be constitutional.   The courts ought not to declare one to be unconstitutional unless it is clearly so.   If there is doubt, the expressed will of the Legislature should be maintained.   Munn v. Illinois, 94 U. S. 123.

WOLCOTT, CHANCELLOR.— The facts in this case, as appear by the bill as amended, are substantially as follows:

By an act of the General Assembly of this State, a corporation was created, entitled "The Board of Pilot Commissioners," in which it was provided, among other things, that "the said Board of Pilot Commissioners, three of whom shall be a quorum when met, shall have full power and authority, under the limitations hereinafter prescribed, to grant license to persons to act as pilots in the bay and river Delaware, and to make rules for their government while employed in that service, to decide all differences which may arise between masters, owners and consignees of ships or vessels and pilots, except in cases hereinafter excepted; provided, that if any person whomsoever shall conceive himself aggrieved by any decision or penalty made, given and imposed by the said board, such persons may, except in cases hereinafter excepted, within six days appeal therefrom to the Superior Court of either of the counties of this State " *    *    *    . And it is further provided in section 4 of the act that " if any person having a license as a pilot shall for the space of two weeks refuse or wilfully neglect to execute the duties of a pilot, every such pilot upon due proof thereof shall forfeit his license; and if any pilot shall enter into any combination with a view of preventing any other person from executing such duties, every such pilot being thereof duly convicted, shall for the first offense forfeit his license as a pilot for the bay or river Delaware for the space of three months; for the second offense, for the space of one year; and for the third offense, absolutely."

The complainants are all pilots on the bay and river

Delaware, licensed according to the provisions of the act passed in that behalf by said board of commissioners, and in order that they might prosecute with greater facility their business or occupation as pilots, they purchased and are, together with Marshall Bertrand, Thomas H. Carpenter, Harry C. Maull, Jacob Teal, James W. Marshall, and James Rutherford, the sole owners of the boat called the Thomas Howard, and since the purchase thereof the complainants have used and are now using the said Thomas Howard in the discharge of their business as pilots.

Some time prior to the 23d day of June, A. D. 1891, one John B. Merritt, a pilot on the bay and river Delaware, made application to said Board of Pilot Commissioners to assign to and obtain a place for him on some of the boats used by the pilots on said waters, for the purpose of enabling him to pursue his business as a pilot, and in pursuance of such application, the said board directed that the said Merritt be allowed to cruise on the said Thomas Howard; and subsequently, on the 23d day of June, A. D. 1891, the secretary of said board served notice as follows upon all the owners of said boat, except James W. Marshall and James Rutherford:

"WILMINGTON, DEL., *June* 23, 1891.

"DEAR SIR.— At a special meeting of the pilot commissioners, held to-day, on motion, it was

"Resolved, That if the pilots of the pilot boat Howard do not comply with the rules of the board in the case

of Mr. Jno. B. Merritt within twenty days, the license of said pilots shall be revoked.

> " Yours truly,.
>
> " R. F. TOWNSEND,
>
> " Secretary."

After the receipt of the foregoing notice, the complainants and Marshall Bertrand, Thomas H. Carpenter, Harry C. Maull and Jacob Teal, being the owners of eight-tenths of the said boat Thomas Howard, refused to comply with the said order directing the said John B. Merritt to be placed upon said boat, he having no share nor interest therein.

At the time of the application of the said John B. Merritt to the said Board of Pilot Commissioners as aforesaid, and ever since and now, the said pilot boat Thomas Howard was, has been, and is well and sufficiently manned with duly-licensed pilots for the full and satisfactory performance of its duties as a pilot boat; and that the sole object of the defendant in insisting that the said Merritt should be received upon the said Thomas Howard, as aforesaid, was to give employment to the said John B. Merritt, as pilot, to the end that he should render pilotage service, he not then being employed upon any pilot boat.

To the bill the complainants pray that the defendant be perpetually restrained from revoking the licenses of the complainants by reason of their unwillingness to take on board the boat Thomas Howard the said John B. Merritt, etc., together with the usual prayers for an answer, further relief and subpoenas.

To the bill the respondent demurred generally.

The respondent having demurred generally, all the facts as set forth in the bill are admitted to be true.

The act of April 5th, 1881, contains three provisions, under one of which the Board of Pilot Commissioners must have acted in assigning John B. Merritt to the pilot boat Thomas Howard.    These are,

First.  The clause in section 1, which empowers the board " to make rules for their " (pilots) " government while employed in that " (pilotage) " service."

Second.  The clause in section 1 which empowers the board " to decide all differences which may arise between masters, owners and consignees of ships and vessels and pilots, except in cases hereinafter excepted."    And,

Third.  The clause in section 4 of the act which provides " If any pilot shall enter into any combination with a view of preventing any other person from executing such duties, every such pilot being thereof duly convicted, shall for the first offense, forfeit his license as a pilot for the bay and river Delaware for the space of three months; for the second offense, for the space of one year; and for the third offense, absolutely."

We will consider these provisions in their reverse order.

Has any combination been shown into which the complainants had entered with a view of preventing John B. Merritt from executing his duties as a pilot?    The simple fact that they refused to allow him to cruise in their particular boat can hardly be considered a combination within the intent and meaning of this provision, there still remaining to him a number of different ways in which he might have discharged these duties.    He might have found employment upon one of the other ·

pilot boats.    He might have purchased a pilot boat of his own.    Or he might have joined with other pilots in the procurement of still another pilot boat.    And even if he were unable, for any reason, to avail himself of the opportunities thus left to him, it would be his mis- fortune and not the fault of complainants.    If the re- fusal of the owners of a pilot boat to admit into their number any or all pilots who shall see fit to make this request, is a combination against such pilots, then what protection have the owners, or what guaranty have they of the privileges purchased with their personal means? It would be stretching the statute too far to construe such a refusal into a combination that clashes with the spirit of the act.

But even if it should be conceded that such a com- bination as that contemplated by the provision of sec- tion 4, just quoted, to have existed prior to the notice which was served upon certain of the complainants, threatening the revocation of their respective licenses, it nowhere appears that such pilots were ever duly con- victed of such an offense.    Conviction by due course of law is made by the statute a condition precedent to a forfeiture of the licenses held by those who may enter into such a combination.    It has not been shown that the board gave the complainants an opportunity to be heard, so that it might determine after a full hearing (assuming for the purposes of this case that it has such power), whether or not they were guilty of a violation of the statute and had incurred the forfeiture prescribed as a penalty against such combination.

Furthermore, so far as the facts disclose, this com- bination, admitting it to be such, was the first offense

of complainants.    Now the notice served upon these complainants declares an indefinite revocation of their licenses, whereas the statute expressly declares that for the first offense, the penalty shall be a forfeiture of the license for three months only.    Taking this view of the matter therefore, this action of the board was unsanctioned by the act of its being.

Let us now see whether the action of the board can be justified under the power given by section 1 to decide all differences between owners of vessels and pilots.

Granting now that the refusal of the complainants to allow John B. Merritt to cruise on board the Thomas Howard, was a difference between them, of which the board could take cognizance, it had no right to proceed in the way it did.    The method which the board adopted of coercing submission to its decisions of these alleged differences, was by declaring a revocation or forfeiture of complainants' licenses.    This, however, the board had no authority to do, inasmuch as this power was not expressly given to it by the act, or any of its supplements.    The power vested in the board to make rules for the government of pilots and to decide differences carries with it the incidental power to enforce the same by the imposition of reasonable pecuniary penalties, without any express grant of power to that effect.    But the right to inflict a forfeiture as a penalty must be plainly given, and cannot be derived from usage or raised by implication.

If it be insisted that the action of the board was authorized by that clause in section 1 which empowered it to make rules for the government of pilots, then the exact meaning and extent of the power thus granted must

be considered.    In doing this, two questions naturally arise:

First.    Does the authority given by the act to the Board of Pilot Commissioners to make rules for the government of pilots while in the pilotage service, extend to their boats, and if so, how far?

Second.    Granting for the sake of the argument that it does, did the board, in the exercise of this authority, proceed in accordance with the provisions of the act which gave it that authority?

As to the first question, it is undeniably true that the Board of Pilot Commissioners has at least a qualified authority over pilot boats.    While these boats may be property of individuals, as was the case with the Thomas Howard, yet being employed in the pilotage service by their owners, they were by such act dedicated to a use or service in which the public has an interest, to which individual property rights, to the extent of the public good, are subordinate.

It is only necessary to suggest the extent and importance of the commerce carried on upon the bay and river Delaware, to appreciate the vital interest which the public has therein.    Pilotage service is a necessary auxiliary to commerce, and it was to promote or increase the efficiency of that service upon these waters that the act of April 5th, 1881, was passed, whereby the Board of Pilot Commissioners was established.    This board is empowered " to make rules for the government of pilots while in this " (pilotage) " service."    In order to render this power effective, it must extend to the instruments of the pilots' trade or vocation.    Pilot boats are, there-

fore, subject to such proper and legal rules as the board may see fit to make.

At the same time, however, the exact extent of the interest which the public has in the pilotage service must not be forgotten. The public has no interest in the government of pilots or their boats, except so far as it is conducive to the public good. Any rule or set of rules which shall have any other purpose than this, even though they be made for the benefit of some of the pilots themselves, unless expressly authorized by the provisions of the act, are without its scope, and void.

Now, in the present case, it has not been shown how the installment of John B. Merritt upon the pilot boat Thomas Howard will inure to the public good. It is stated in the bill, and admitted by the demurrer, that the Thomas Howard was at that very time well and efficiently manned and equipped. She was prepared and competent to act her part in the discharge of this pilotage service so important to the public at large. If the placing of Merritt upon the Howard would have in any way improved the service, then that fact should have been presented by the respondent. This, however, has not been done, and I have no facts before me which can by any possibility lead me to such a conclusion.

The action of the board, then, not having been shown to have been inspired in the interest of the public generally, must rest its authority, if at all, upon some express and positive provision of the act. Such a provision, however, I have not been able to find. The clause authorizing the board to make rules for the government of pilots while in this service, having for its

sole purpose, as has just been shown, the conservation of the public interest alone.

As to the second question, the answer must be in the negative. Under the clause authorizing the Board of Pilot Commissioners " to make rules for the government of pilots," etc., the orderly course of procedure would have been to make general rules in pursuance of this power. In this case, however, the board assigned John B. Merritt to the boat Thomas Howard before making any rule upon the subject. This action of the board partook more of the nature of an order than of a rule. These words " rule " and " order," when used in a statute, have a definite signification. They are different in their nature and extent. A rule, to be valid, must be general in its scope and undiscriminating in its application; an order is specific and limited in its application. The function of an order relates more particularly to the execution or enforcement of a rule previously made. Now the mode adopted by the board to place Merritt upon the Howard was really an order and not a rule, because it applied and was directed to only one particular boat and its owners. This proceeding of the board then, not being in strict compliance with the provisions of the statute which created it, is irregular and, therefore, void.

I do not wish, however, to be understood as questioning the power of this board, within the limitations of the act, and to the extent of the public interest, to control the conduct of the pilots in the pursuit of their vocations. Such power it certainly has, but it must be exercised by the formulation of rules and not by orders alone.

Opinion.

I have reserved the question of jurisdiction for the last, because, while it was asserted that this court has not jurisdiction of the cause, yet it was not seriously contended for. The jurisdiction of the court in this case may be rested upon the fact that the declared intention of the board to revoke complainants' licenses was virtually a declaration of a proposed forfeiture of their licenses, which, under any view of the case presented, as has just been shown, is not authorized by the act. An absolute or indefinite revocation of the licenses is equivalent to a forfeiture, and the action of the board must be so construed. While the general doctrine is that equity may relieve against forfeitures declared by contract, but not against those expressly declared or authorized by statute, yet when they are not so declared or authorized, equity will relieve by the interposition of its injunctive power.