Shor v. Dickey et al.

*Snyder, Miller, Hull & Hull, J. Schneyer Clearfield,* and *William A. Gray,* for plaintiff.

*William A. Schnader,* Attorney General, *A. L. Edwards* and *James A. Strite,* for defendants.

WICKERSHAM, J., October 3, 1934.—Briefly stated, the plaintiff in his bill of complaint alleges that he is engaged in the practice of dentistry in this Commonwealth and has been so engaged for 23 years last past; that he graduated from the Medico-Chirurgical College of Philadelphia, receiving the degree of doctor of dental surgery, and was duly licensed by the then Dental Council of Pennsylvania to practice dentistry in this State in 1911; that he has at the present time 14 dental offices in 8 counties in the State of Pennsylvania; that the dental offices owned by him in the said 8 counties have been conducted by him for many years prior to the enactment of The Dental Law of May 1, 1933, P. L. 216; that he has invested in said profession the accumulated savings of a lifetime; that he has expended large sums of money for dental equipment, dental appliances, and apparatus to equip said offices; that pursuant to the Act of May 7, 1907, P. L. 161, he has caused his dental license granted by the State Dental Board to be registered by the prothonotary of the court of common pleas of one county in which he has a dental office, as required by said act and supplements, and, in addition, in each of the counties in which he has a dental office, and that the dentists assisting him in his dental offices are all duly

licensed by the State Dental Council and Examining Board; that the State Dental Council and Examining Board, acting through Robert W. Semenow, Esq., contends that a licensed dentist in the State of Pennsylvania, under said Act of 1933, is permitted to have but one dental office, that to operate more than one dental office constitutes an offense, and that plaintiff's conduct in owning and operating more than one dental office is a civil and criminal violation of said Act of 1933, and that the State Dental Council and Examining Board is threatening to institute proceedings under the said dental act against the plaintiff.

Plaintiff's bill raises constitutional questions which will be hereafter discussed. He prays for equitable relief.

Upon presentation of plaintiff's bill in equity, the court granted a rule to show cause why a preliminary injunction should not issue.

The Commonwealth filed an answer raising preliminary objections as follows:

"1. The bill sets forth no cause of action.

"2. The bill sets forth no ground for equitable relief.

"3. The bill prays for a decree giving a declaratory interpretation of an act of assembly.

"4. The bill prays for a declaratory decree without alleging an existing controversy or threatened controversy entitling the plaintiff to equitable relief.

"5. The bill does not allege that the defendants by action of the entire board or a majority thereof have made any complaint against plaintiff, or served a written copy of such complaint on plaintiff, or fixed any time and place for hearing, or given plaintiff notice of any proceedings for revocation of his license, or that defendants have done any of the acts or begun any of the proceedings prescribed by the Dental Law of 1933 for revoking plaintiff's license.

"6. The bill seeks to restrain defendants from exercising discretionary powers vested in them by the laws of this Commonwealth.

"7. The Dental Law of 1933 provides for persons aggrieved by action of the State Dental Council and Examining Board a plain, adequate, and complete remedy by appeal to the Court of Common Pleas of Dauphin County and from that court to the Superior Court. There is no jurisdiction in this court to entertain this bill where such a remedy is provided.

"8. The Dental Law of 1933 provides an exclusive remedy for persons aggrieved by action of the State Dental Council and Examining Board in suspending or revoking licenses. There is no jurisdiction in this court to entertain this bill where such a remedy is provided.

"9. The bill does not allege any community of interest among plaintiff and other persons practicing dentistry in the State of Pennsylvania sufficient to permit this court to entertain this bill as a class bill."

The defendants contend that this case does not come under article v, sec. 20, of the Constitution, and the various acts of assembly conferring equity jurisdiction in ten specific classes and one general class which is as follows: "and in such other cases, as the said courts have heretofore possessed such jurisdiction and powers, under the constitution and laws of this commonwealth": Act of June 16, 1836, P. L. 784, sec. 13. In support of this contention they rely upon Wilson v. Blaine et al., 262 Pa. 367, Hogsett et al. v. Thompson et al., 258 Pa. 85, Davis v. Gerhard, 5 Whart. 466, and the Constitution of 1874.

In the cases relied upon by the Commonwealth, it has been held that courts of equity in this State have no jurisdiction save that expressly conferred upon them. In Wilson v. Blaine et al., supra, an effort was made to contest the result of an election held to determine whether or not the debt of a municipality may be increased. It was held:

"As the Act of April 20, 1874, P. L. 65, provides no method for contesting the result of an election on the question of an increase of a municipality's indebtedness, there can be no contest thereof.

"The judgments and decrees of the courts in such proceedings cannot be collaterally reviewed by proceedings in equity."

In Hogsett et al. v. Thompson et al., supra, it was held:

"The jurisdiction given to a court of equity by the statutes for the prevention or restraint of the commission of acts contrary to law and prejudicial to the rights of individuals was never intended to be used to obstruct the collection of debts. It is only where the creditor is clearly and undeniably proceeding against right and justice to use the process of the law to the injury of another that equity intervenes to stay his hand.

"The supervision and control of partnerships and corporations are recognized heads of equity jurisdiction, but the administration of the affairs of an individual, sui juris and compos mentis, is not; . . ."

In Davis v. Gerhard, supra, it was held:

"The Supreme Court has no jurisdiction of a bill of discovery in aid of a judgment obtained in the District Court for the City and County of Philadelphia", for reasons given by Huston, J. (see page 470).

In these cases, it will be observed, no constitutional questions were involved.

In reply to this contention, counsel for the plaintiff refers to Chalmers v. City of Philadelphia, 250 Pa. 251, Martin v. Baldy, 249 Pa. 253, Valley Rys. v. Harrisburg et al., 280 Pa. 385, Louis K. Liggett Co. v. Baldrige, Attorney General, et al., 278 U. S. 105, Evans v. Baldrige et al., 294 Pa. 142, Kalman et al. v. Walsh, Director, etc., et al., 355 Ill. 341, 189 N. E. 315, Ramsay v. Shelton et al., 329 Ill. 432, 160 N. E. 769, State Board of Medical Examiners et al. v. Friedman, 150 Tenn. 152, 263 S. W. 75, and Morris et al. v. Board of Pilot Commissioners et al., 7 Del. Ch. 136, 30 Atl. 667.

In Chalmers v. City of Philadelphia, supra, a bill in equity was filed by a citizen and taxpayer of the City of Philadelphia against the city and others, for the purpose of testing the constitutionality of the Act of April 18, 1899, P. L. 49, which provided for the examination and licensing of engineers having charge of steam boilers, etc. In the bill, it was averred that the statute was unconstitutional and void as being special and local legislation, and the plaintiff therefore prayed for an injunction to restrain the defendants from enforcing the provisions of the act. Defendants demurred on the ground that the act was constitutional, and the court below sustained the demurrer. Subsequently, a decree was entered dismissing the bill. The plaintiff appealed. The decree of the court below was reversed, and it was directed that the bill of the plaintiff be reinstated. In that case, counsel for the plaintiff contended that the act was local and special, that it was an attempt to regulate labor or the pursuit of trade, in violation of the provisions of article III, sec. 7, of the Constitution. It will be noted that in that case no proceedings were threatened, but the court took jurisdiction because of the alleged unconstitutionality of the statute; it does not appear that any threat was made by the city authorities to enforce against the plaintiff the act of assembly about which complaint was made.

In the instant case, it is alleged that the examining board has instructed Robert W. Semenow, Esq., chief enforcement officer of the Department of Public Instruction of the Commonwealth, to institute proceedings at once against the plaintiff to revoke or suspend his dental license on the ground that he has more than one dental office in the State of Pennsylvania. It is further averred that the said Robert W. Semenow, Esq., has informed William A. Gray, Esq., counsel for the plaintiff, that a licensed dentist in the State of Pennsyl-

vania is permitted to have but one dental office and that to operate more than one dental office constitutes an offense; that the conduct of plaintiff in owning and operating more than one dental office is a civil and criminal violation of The Dental Law of 1933. It is further averred that the State Dental Council and Examining Board is threatening to institute proceedings under the said Dental Law against the plaintiff and cause a complaint to be filed immediately against him to revoke or suspend his license to practice dentistry, if he continues to own and conduct more than one dental office in the State of Pennsylvania (see Paragraph 5 of plaintiff's bill of complaint). We think the allegations in plaintiff's bill bring his case squarely within the decision of the Supreme Court in Chalmers v. City of Philadelphia, supra.

It is contended by the defendants that the ownership and operation of 14 dental offices in 8 counties of this Commonwealth constitutes an offense under The Dental Law subjecting plaintiff to prosecution, the result of which, plaintiff suggests, would be that if this construction be sound then prosecutions could be brought against him in 8 counties of this Commonwealth in which various verdicts could be rendered; he might be convicted in one county and acquitted in another; in any event, a multiplicity of suits would be the result. In Martin v. Baldy, supra, it was held:

"A court of equity will not ordinarily enjoin a criminal proceeding against a single individual, but where a multiplicity of suits may be prevented, or where an initial, fundamental question of constitutionality or legal right is involved, equity will assume jurisdiction."

In writing the opinion of the court below, Wilson, P. J.—affirmed by the Supreme Court in a per curiam opinion—clearly stated the law as follows (p. 259):

". . . We regard it as well settled, so well settled as not to require a citation of authorities upon the subject, that, except in cases where a multiplicity of suits would constitute reason for an exception, or where an initial fundamental question of constitutionality or legal right is involved in the case, a court of equity will not intervene, but will leave the plaintiff to have his rights determined in the criminal proceeding.

"In the present case, however, we have both the elements of a multitude of cases and interests and a serious question of constitutional right and privilege, which the plaintiffs, as it seems to us, have a right to have determined in the first instance, and, if their views of their rights are sustained, to be relieved of the annoyance, expense and the possible prosecution, which might otherwise come to them, if their case cannot now be heard and decided. Their right to practice their occupation is a property right and entitled to protection, unless it is regulated and controlled in a lawful manner." Citing Mahoning & Shenango Railway & Light Co. v. New Castle, 233 Pa. 413.

We have quoted at length from this opinion for the reason that the facts and the law which Judge Wilson had before him are identical with the facts and the law in the instant case, to wit, a threat to cancel plaintiff's registration to practice dentistry, and an order by the Dental Council to Robert Semenow, director, in the Department of Justice, to begin criminal proceedings against the plaintiff, and challenging the constitutionality of the said Act of 1933.

It clearly appears from the pleadings that the question involved in this case relates to the validity of The Dental Law of 1933 and the interpretation placed thereon by the Dental Council and Examining Board. In Valley Rys. v. Harrisburg et al., supra, it was held:

"Where the question involved relates to the validity of a city ordinance regulating the movement of cars of a street railway company, such question is

within equity jurisdiction, notwithstanding the Public Service Commission Law of July 26, 1913, P. L. 1374, as amended by the Act of March 23, 1921, P. L. 43.

"While the court will grant an injunction to restrain the enforcement of the ordinance, it will be without prejudice to the right of the city or other party in interest to ask the Public Service Commission for relief."

See also Clark et al., Commrs., etc., et al. v. Beamish, Secretary of the Commonwealth, et al., 313 Pa. 56, 65, in which it appears that in plaintiff's amended bill of complaint a question of constitutionality was raised concerning section 4 of the Act of April 18, 1929, P. L. 549, purporting to confer upon the Secretary of the Commonwealth of Pennsylvania the right to purchase and supply voting machines. We held that the plaintiffs had a legal right to raise the constitutionality of said section of said act, and that this court had jurisdiction to consider and pass upon this objection. That case was affirmed by the Supreme Court on the decision of our court. See also Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11, in which it was held that under Equity Rules 48 and 49 preliminary objections to the plaintiff's bill must be construed in the same way as similar objections to plaintiff's statement of claim under the Practice Act of May 14, 1915, P. L. 483. In that case, the court below dismissed the bill for want of jurisdiction, which action was reversed by the Supreme Court. To the same effect, see Kolodychak v. Donora School Dist., 14 D. & C. 583, and Douglas et ux. v. Clarke, 13 D. & C. 267.

It appears from the pleadings that the plaintiff established his dental offices in eight counties of this Commonwealth under the provisions of the Acts of 1907 and 1921, to which reference will hereafter be made, a long time prior to the passage and approval of The Dental Law of 1933; that he expended the savings of a lifetime in establishing said dental offices and supplying them with the necessary equipment. He therefore contends that he has a property right in these offices which cannot be taken away, and for the Commonwealth to do so would be depriving him of such right, in violation of the due process clause in the fourteenth amendment to the Constitution of the United States; and that it will be destructive to his property rights to deprive him of the right to do business in other cities and counties of this Commonwealth.

This contention is supported by the case of Louis K. Liggett Co. v. Baldrige, Attorney General, et al., supra. The Liggett company was a corporation of the State of Massachusetts and established in Pennsylvania one of said company's drug stores. After the establishment thereof, the legislature enacted the Act of May 13, 1927, P. L. 1009, providing that no corporation should open any drug store after the passage of said act unless all the shareholders of the corporation were registered pharmacists. The District Court for the Eastern District of Pennsylvania dismissed the bill filed to enjoin the enforcement of the said statute. An appeal was taken to the Supreme Court of the United States, and the decree of the district court was reversed. It was said (p. 111):

"Appellant's business is a property right, . . . and as such entitled to protection against state legislation in contravention of the federal Constitution. . . .

". . . The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare."

It is to be noted that in the Liggett case no prosecution had been instituted, although the statute so provided. Writing the opinion of the Supreme Court, it was said by Mr. Justice Sutherland (p. 110):

". . . Suit was brought to enjoin these officers from putting into effect their

threats, upon the ground that the act in question contravenes the due process and equal protection clauses of the Fourteenth Amendment. It is clear from the pleadings and the record, and it is conceded, that if the act be unconstitutional as claimed, appellant is entitled to the relief prayed. . . ."

It will be observed that the Liggett case is exactly in point with the instant case in every particular.

The decision in the Liggett case was followed by the Supreme Court of Pennsylvania in Evans v. Baldrige et al., supra, a case involving the same subject matter. A case in which the same principle was involved was Kalman et al. v. Walsh, Director, etc., et al., supra, decided by the Supreme Court of Illinois. In that case, a bill in equity was filed to restrain the dental committee of the Department of Education and Registration from proceeding against the complainant, on the ground that the dental committee had no jurisdiction to hear and pass upon the alleged charges. A demurrer was filed by the dental committee and sustained by the court below. On appeal, the Supreme Court of Illinois reversed the lower court and remanded the equity proceedings to the court below with directions to overrule the demurrer to the bill. The opinion of the Supreme Court of Illinois is enlightening. See Ramsay v. Shelton et al., supra, decided by the Supreme Court of Illinois; State Board of Medical Examiners et al. v. Friedman, supra, decided by the Supreme Court of Tennessee, and Morris et al. v. Board of Pilot Commissioners et al., supra, decided by the Court of Chancery of Delaware.

The fourteenth amendment to the Constitution of the United States provides, inter alia: "Nor shall any State deprive any person of life, liberty, or property, without due process of law". The right to practice medicine has been held to be within the protection of this amendment: Allgeyer v. Louisiana, 165 U. S. 578; Pierce, Governor, et al. v. Society of Sisters, 268 U. S. 510; Hanover Fire Ins. Co. v. Harding, County Treasurer, 272 U. S. 494; Frost & Frost Trucking Co. v. Railroad Commission of California, 271 U. S. 583. Article I, sec. 9, of the Pennsylvania Constitution is to the same effect as the fourteenth amendment of the Constitution of the United States; and article III, sec. 7, of the Pennsylvania Constitution provides that "the General Assembly shall not pass any local or special law: . . .

"Regulating labor, trade, mining or manufacturing."

In Harris v. State Board of Optometrical Examiners, 287 Pa. 531, it was held (p. 534) :

"The right of an optometrist, duly licensed, to conduct his business or practice optometry is a property right protected by the Constitution: Dent v. West Va., 129 U. S. 114, 123, 124; Douglas v. Noble, 261 U. S. 165. Where property rights, so secured, are unlawfully invaded by the legislature, directly or by one of its agents, the aggrieved person may appeal to the courts for redress. This right had its inception in the Magna Charta. The remedy, unless otherwise provided by statute, is by proceeding in equity to enjoin the wrong".

See also Waller v. State, 68 S. W. 601, and Commonwealth v. Keemer, 20 Dist. R. 983. All these cases uphold and sustain the contention of the plaintiff that his right to practice dentistry is a property right which cannot be taken away from him except by due process of law.

We think, therefore, that this court has jurisdiction to entertain plaintiff's bill of complaint, which conclusion is supported by the great weight of authority.

We next come to consider whether the Dental Law of 1933, in any of its provisions, authorizes the defendants to cancel plaintiff's license to practice dentistry for the reason that he has more than one dental office in the Common-

wealth of Pennsylvania, and whether said act authorizes his prosecution under said act for the same reason.

The plaintiff has been practicing dentistry since 1911. The law in force at that time was the Act of May 7, 1907, P. L. 161. Section 6 of that act provides:

". . . All persons shall be construed to be practicing dentistry who shall be the owner, part owner, partner, shareholder, operator, manager, assistant, or in any other manner engaged in conducting any office, *or other place* [italics ours] for the purpose of performing dental operations, or treating, . . . ."

We find nothing in this act which prohibited the plaintiff from establishing the several dental offices which he had prior to the passage of the Dental Law of 1933.

The Act of May 3, 1915, P. L. 219, which was an amendment to section 6 of the Act of 1901, provided:

". . . A person shall be deemed to be engaged in the practice of dentistry within the meaning of this act, . . . who is manager, proprietor, or conductor of a place for performing dental operations; . . ." omitting the words "owner", "part owner", "partner", and "operator" contained in section 6 of the Act of 1907. The Act of May 5, 1921, P. L. 399, provides, in section 6:

"It shall be unlawful for any person to practice dentistry, or to employ any person as an operator in dental surgery or practitioner in dentistry, or to act as or to cause or permit any person to act as an operator in dental surgery or as a practitioner in dentistry, who is not duly qualified and registered as a practitioner in dentistry as provided by law. A person shall be deemed to be engaged in the practice of dentistry within the meaning of this act . . . who is manager, proprietor, or conductor of a place for performing dental operations. . . ."

It is further provided in section 5 of this act:

". . . Every person practicing dentistry within this Commonwealth at the time of the passage of this act shall, within six months from the passage thereof, cause his or her license to be recorded in the office of the prothonotary of the court of common pleas *of each county* [italics ours] in which such person shall practice dentistry, unless the same shall have already been recorded in said county. . .."

The plaintiff, in paragraph 11 of his bill, alleges that he caused his dental license granted by the State Dental Board to be registered by the prothonotary of the court of common pleas of one county in which he has a dental office, as required by said act, and in addition, in each of the counties in which he has a dental office.

It thus appears that prior to the passage of The Dental Law of 1933 the plaintiff complied with the provisions of the law as it existed when he established his offices in eight of the counties of this Commonwealth, and thereby, as we have before stated, acquired property rights which we think cannot now be taken from him.

It is also contended by the Commonwealth that "the bill seeks to restrain defendants from exercising discretionary powers vested in them by the laws of this Commonwealth", referring to 4 Pomeroy, Equity Jurisdiction, sec. 1751, and 2 High, Injunctions, sec. 1311; also Warfel v. Cochran et al., 34 Pa. 381. We think, however, this must be a legal discretion—one authorized by law, the Constitution of Pennsylvania, and the fourteenth amendment to the Constitution of the United States. We cannot agree that the discretionary power of the Dentil Council may be exercised if, in so doing, it will deprive the plaintiff of his property right, and if it is in violation of the constitutional mandates we have heretofore pointed out.

We do not find anything in either the title or the subject matter of The Dental Law of 1933 which prohibits the plaintiff from maintaining more than one office in which to practice dentistry. The said act repeals the dental laws of 1907, 1915, and 1921, to which reference has heretofore been made, but the right to maintain more than one office in which to practice dentistry was authorized by said acts, and therefore his property rights had accrued. We are of the opinion that the repeal of said statutes did not operate to impair or otherwise affect the rights of the plaintiff which had accrued and were vested while said repealed statutes were in force: 59 C. J. 1187, sec. 723, citing authorities in many other jurisdictions, and Keystone State B. & L. Assn. v. Butterfield, 74 Pa. Superior Ct. 582. The same principle was announced by Judge Trexler in Tiegel v. Love, 61 Pa. Superior Ct. 149, 157. See also Scranton City v. Stokes (No. 1), 28 Pa. Superior Ct. 434.

The Commonwealth further contends that the plaintiff may obtain the same relief by a statutory method which is plain, adequate, and complete, and intended to be exclusive. The Commonwealth relies on Cohen v. Schofield et al., 299 Pa. 496, 502, and Brown's Appeal, 66 Pa. 155; also the Act of March 21, 1806, 4 Sm. L. 326, sec. 13, which provides:

"In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts, shall be strictly pursued, and no penalty shall be inflicted or any thing done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

In Cohen v. Schofield et al., supra, it was held:

"Where a remedy for a particular wrong or injury has been provided by statute, the *general* [italics ours] rule is that no relief in equity can be afforded in such case by injunction."

Brown's Appeal, supra, is to the same effect.

The Commonwealth also relies on Parkin v. New Kensington Borough, 262 Pa. 433, Sipe v. Tarentum Borough, 263 Pa. 338, and Whitney et al. v. Jersey Shore Borough, 266 Pa. 537. These cases involve bills in equity to restrain boroughs from enforcing provisions of The Borough Act of May 14, 1915, P. L. 312, which provides in chapter VII, art. I, sec. 9, that:

"Complaint may be made to the next court of quarter sessions, upon entering into recognizance, with sufficient security to prosecute the same with effect, and for the payment of costs, by any person aggrieved in consequence of any ordinance, regulation, or act done or purporting to be done in virtue of this act, and the determination and order of the court thereon shall be conclusive."

The cases to which we have just above referred hold that this remedy provided by the Borough Code confers an adequate remedy, and that persons aggrieved cannot by bill in equity restrain a borough from proceeding in any other way than that prescribed by the act.

But the remedy provided by the act must be adequate. The Dental Law provides that upon complaint made the party complaining is entitled to a hearing before the Dental Council and Examining Board or a committee of that council; if after hearing the license of the party complained against is suspended or revoked, the person aggrieved may appeal to the court of common pleas of this county. Said Dental Law in section 5 further provides:

"Appeals from suspensions and revocations of licenses and registrations must be taken within thirty days after such suspension or revocation, of which action immediate notice shall be given the licensee or registrant by registered mail addressed as above provided. In the case of appeals from other actions

of the board, the appeal may be taken at any time by the person aggrieved by such action. *No such appeal shall act as supersedeas*" [italics ours].

It thus appears that if the license is revoked the licensee is prohibited from practicing dentistry—and in the instant case this involves the closing of at least 13 established places of business—until the case is disposed of in this court. That would require some time. If this court sustains or overrules the action of the board, an appeal is then provided to the Superior Court of Pennsylvania, whose decision shall be final. This would require more time. In the meantime, the licensee is prohibited from practicing dentistry in any of his offices, and "no such appeal shall act as supersedeas". Even if the appeal should finally be determined in his favor by the Superior Court, what becomes of his practice? The fact that his license is revoked will necessarily affect his professional standing; his patients would undoubtedly go to other dentists; as suggested by counsel for the plaintiffs, his professional career would be dead, and there would be no resurrection. We think, therefore, that the remedy provided by the act is neither adequate nor complete and that the plaintiff may appeal to this court in equity for relief.

If citation of authority is necessary to support the well-grounded principle that equity may intervene when the remedy at law is inadequate, inconvenient, or incomplete, we refer to Pa. R. R. Co. v. Bogert, 209 Pa. 589, where it is held:

"To induce equity to refuse its aid to a suitor, it is not sufficient that he may have some remedy at law. An existing remedy at law to induce equity to decline the exercise of its jurisdiction in favor of a suitor, must be an adequate and complete one. And when from the nature and complications of a given case, its justice can best be reached, by means of the flexible machinery of a court of equity, in short where a full, perfect and complete remedy cannot be afforded at law, equity extends its jurisdiction in furtherance of justice."

And in Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443, it was held:

"A bill in equity may be sustained solely on the ground that it is the most convenient remedy: Appeal of Brush Electric Co., 114 Pa. 574. This is especially so where the remedy afforded by a court of law is obviously inconvenient and of doubtful adequacy."

Many other cases in support of this doctrine might be cited, but we think these are sufficient to establish the conclusion we have reached that the remedy provided by law is inadequate, leaving the plaintiff helpless and unable to follow his professional career during all the time proceedings are had on appeal in this court and in the Superior Court. We are of opinion, therefore, that this contention of the Commonwealth cannot be sustained.

The Commonwealth further contends that "this bill is premature and seeks to enjoin a mere apprehended injury"; and "assuming, for the purpose of argument, that plaintiff would have a standing in a court of equity after proceedings were taken by the defendants to revoke plaintiff's license, it is nevertheless clear that he has no standing where no complaint has been filed, no time and place fixed for a hearing, no notice given to him and none of the other proceedings required by the Dental Law of 1933 to be taken in revoking or suspending a license to practice dentistry." The Commonwealth relies principally upon the decision of the Supreme Court of the United States in Lehmann v. State Board of Public Accountancy et al., 263 U. S. 394, 68 L. Ed. 354, depending upon a statement of Mr. Justice McKenna, in which that learned justice says (p. 398):

". . . We cannot yield to that assertion or assume that the Board will be impelled to action by other than a sense of duty or render judgment except

upon convincing evidence introduced in a regular way with opportunity of rebuttal. We certainly cannot restrain the Board upon the possibility of contrary action. . . ."

This was an appeal from the decision of the Supreme Court of the State of Alabama to review a decree affirming a decree of the District Court for Montgomery County dismissing a bill to enjoin the annulling of the license of a public accountant. What was actually decided is found in the first syllabus (L. Ed. 354), in which it was held:

"The judgment of a state court that proceedings of a government board in revoking the license of a public accountant, in accordance with state statutes, were not in derogation of the Constitution of the state, is binding on the Supreme Court of the United States."

The Commonwealth evidently has overlooked the decision of the Supreme Court of the United States in the case of Pierce, Governor, et al. v. Society of Sisters, 268 U. S. 510, 69 L. Ed. 1070, in which it was held, in the third and fourth syllabi:

"Injunction lies at the suit of a corporation operating a private school to prevent threatened enforcement of a statute requiring all children to attend public schools, which will destroy its business and property.

"A suit to enjoin threatened enforcement of a statute requiring all children to attend public schools, to the destruction of the business of complainant, who conducts a private school, is not premature, although the statute does not become effective for two or three years, where patrons have begun to refuse to enter children in private schools, and to withdraw children already entered, so that, if the suit is not brought before the statute takes effect, the injury will be irreparable."

See opinion of Mr. Justice McReynolds, p. 535, where he says:

"Appellees are corporations and therefore, it is said, they cannot claim for themselves the liberty which the Fourteenth Amendment guarantees. Accepted in the proper sense, this is true [citing authorities]. . . . But they have business and property for which they claim protection. These are threatened with destruction through the unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools. And this court has gone very far to protect against loss threatened by such action . . . [citing authorities]".

See also to the same effect Frost & Frost Trucking Co. v. Railroad Commission of California, 271 U. S. 583, and Hanover Fire Ins. Co. v. Harding, County Treasurer, 272 U. S. 494.

The Commonwealth has not referred to any Pennsylvania authorities in support of its contention. We have found in a former part of this opinion that the contention is not sound and cannot be followed by us.

We think we have disposed of every relevant contention of the Commonwealth as set forth in its answer preliminarily objecting to plaintiff's bill of complaint. Many other authorities have been cited by counsel for the defendants which we have studied, and after mature deliberation we are convinced that the allegations in defendants' answer preliminarily objecting to plaintiff's bill cannot be sustained and must be overruled.

And now, October 3, 1934, it is ordered, adjudged, and decreed that all the allegations in defendants' answer preliminarily objecting to plaintiff's bill of complaint must be and they are overruled. The defendants are directed within 30 days from the filing of this opinion to file an answer to the merits of the allegations in plaintiff's bill.

From Homer L. Kreider, Harrisburg, Pa.