(No. 13290.—Decree affirmed.)

THOMAS ELAM et al. Appellants, vs. SUSIE ELAM et al. Appellees.

*Opinion filed June 16, 1920—Rehearing denied October 7, 1920.*

1. DEEDS—*direct evidence is not essential to prove undue influence.* Direct evidence is not essential to prove undue influence, and where the facts and circumstances lead to the conclusion that such influence has been exercised in the execution of a deed, and such proof has not been met by satisfactory evidence but there has been a failure to produce evidence which was available, the chancellor is warranted in setting aside the deed.

2. PARTITION—*when decree setting aside deed and granting partition properly denies relief as to bank deposit.* A decree setting aside a deed for undue influence of the complainants in a partition suit and granting partition in accordance with the prayer of the defendants is correct in not requiring the complainants to also account for the misappropriation of a bank deposit, which was a distinct transaction having nothing to do with the deed.

APPEAL from the Circuit Court of Bond county; the Hon. J. F. GILLHAM, Judge, presiding.

J. H. ALLIO, H. A. MEYER, and F. M. GUINN, for appellants.

JOHN D. BIGGS, and CHARLES E. DAVIDSON, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The question in this case is whether a deed made by Martha F. Elam to her three children, the appellants, Thomas Elam, Moses W. Elam and Melvina Vance, is invalid because of incapacity of the grantor to execute the same or because of fraud and undue influence practiced upon her. The appellants filed their bill in the circuit court of Bond county alleging that their father, Moses Elam, was the owner of lots in the village of Smithboro and of an undivided one-half of 141.58 acres of land in Fayette county; that he left a last will and testament devising the same, and at the death of his wife, Martha F. Elam, the executors were to dispose of his real estate and divide the proceeds according to the will; that his son Richard Elam and Martha F. Elam were appointed executors, and Richard having died before Martha he did not carry into effect the clause providing for a sale of the real estate. The complainants claimed interests devised by the will of their father and the undivided one-half of the land in Fayette county by virtue of a deed from Martha F. Elam to them. The widow and children of a deceased son of Moses Elam answered disputing the title claimed to the undivided one-half, alleging that the deed was made without consideration, that it was never delivered, and that Martha F. Elam did not have sufficient mental capacity to make a valid deed and it was procured from her through fraud and undue in-

294 — 7

fluence of the complainants. They also filed what counsel call a bill of interpleader or an intervenor bill making the same charges contained in the answer, and further that a bank deposit of Martha F. Elam was fraudulently taken and divided by the complainants, and praying that the deed should be set aside and the complainants should account for the bank deposit, the amount of which should be declared a lien upon their interests in the real estate. The issue was referred to a special master in chancery to take and report the evidence with his findings. He took and reported the evidence with his conclusions that Martha F. Elam was in a feeble condition and her mind weakened and the deed was procured by undue influence and the bank deposit was illegally and unlawfully taken and divided among the complainants. He recommended a decree setting aside the deed and requiring the complainants to account for the bank deposit. The chancellor confirmed the report of the master so far as the land was concerned, set aside the deed and decreed partition accordingly but declined to grant the relief prayed for as to the bank deposit, and the complainants appealed.

Moses Elam and Martha F. Elam, his wife, were owners, as tenants in common, of the land in question. He died in 1903, leaving a will devising his interest in the land. They had five children, Thomas Elam, Moses W. Elam, Melvina Vance, Jenkins Elam, who died in the lifetime of his father, and Richard Elam, who died January 17, 1909. Each of the deceased sons left a widow and children. Richard Elam was co-executor with his mother of the will of Moses Elam and was her business agent, attending to her business affairs. When he died she was eighty-three years of age and in a very feeble mental and physical condition and was greatly disturbed by his death. She was interested in and had great regard for her grandchildren, and no reason appeared why she should convey her property to the three living children disregarding the inter-

ests of the grandchildren, and especially of the children of
Richard, for whom she appears to have had the highest
regard.   She made two wills, and on February 8, 1909,
which was about three weeks after the death of Richard,
she executed the deed to her three children leaving out the
grandchildren.   She could not write but could read and was
in bed sick and very much affected by the death of her
son Richard.   She signed the deed with her mark.   Moses
W. Elam procured the attorney and secured the attendance
of his mother's physician and the witness to her signature.
The witness who attested the signature testified that from
what he saw of Martha F. Elam and what he knew of
her she was not capable at that time of transacting her
own business affairs; that the attorney handed her the deed
and the doctor was there, and she made her mark.   A wit-
ness testified that shortly after Richard's death she was at
the house when Thomas, Moses and the husband of Mel-
vina Vance were sitting there, and she said to Mrs. Elam,
"Grandma, are you sick?" and she threw the cover over
her head and said they were trying to settle her business
and she just believed it would kill her, and she seemed
greatly concerned about it.   Both of the wills disappeared
and no account was given of them or of their contents,
except that in 1914 Mrs. Elam had one of the wills read
to her by a witness, who remembered that Clara Elam,
who was the widow of Jenkins Elam, was given a certain
amount of money and the rest of the property was to be
equally divided, and when the will was read Mrs. Elam said
that was all right, which indicates that she did not then
remember that she had made any deed or that her bank de-
posit was gone and she had nothing left.   On May 2, 1909,
Thomas Elam and Moses Elam met in the office of an at-
torney in Greenville and divided among the three grantees
in the deed a time deposit certificate for $1066.88, which
was all the money that Martha F. Elam had.   She died on
February 18, 1919.

The facts proved by the defendants established *prima facie* that the deed was procured from Martha F. Elam when greatly enfeebled and mentally disturbed, by undue influence of the complainants, and it was not her voluntary act. Direct evidence is not essential to prove undue influence, and the facts and circumstances led to a conclusion that it was exerted and it was not met by any satisfactory or sufficient evidence. The evidence for the complainants was both meager and unsatisfactory. It consisted of opinions of witnesses with only a general knowledge of Mrs. Elam, that she was competent to do ordinary business, and did not meet the evidence that the unnatural act was the result of undue influence. There were a number of persons present when the deed was made, and neither the attorney, the officer who took the acknowledgment, nor the family physician who was sent for and was present, was produced as a witness nor was any reason given for not producing them. There was no evidence what became of the two wills. The only person present when the deed was made who testified, said that Mrs. Elam was in his opinion not capable of transacting business. A failure to produce evidence which was available is a circumstance to be considered, and the evidence warranted the decree setting aside the deed.

Cross-errors are assigned on the refusal of the chancellor to require the complainants to account for the bank deposit in this suit, but we are of the opinion that there was no error in that. The appropriation and division of the money was a distinct and separate transaction at a different time and place and having nothing to do with the real estate or the deed, and no reason was alleged or proved for charging the amount as a lien on the interests of the parties in the real estate in this suit.

The decree is affirmed.                    *Decree affirmed.*