BLAINE L. RAMSAY, Appellant, *vs.* AUSTIN M. SHELTON *et al.* Appellees.

*Opinion filed February 24, 1928—Rehearing denied April 12, 1928.*

1. WORDS AND PHRASES—*what is an "institution."* An "institution" is an established organized society or corporation, or an establishment of a public character or affecting a community.

2. MEDICINE AND SURGERY—*what is a "medical institution."* The term "medical" pertains to or deals with the healing art or science of medicine, and a "medical institution" is an association or corporation having to do with or which is conducted in connection with the science of medicine or healing.

3. SAME—*when hospital is a medical institution within meaning of paragraph 7 of section 60 of Civil Administrative Code.* The provision in paragraph 7 of section 60 of the Civil Administrative Code that the members of the committee authorized to conduct hearings in the matter of revoking or renewing licenses to practice medicine must not be members of any medical school or "medical institution" includes a hospital in which courses of medical instruction, whether post-graduate or under-graduate, are given, and where members of said committee are on the staff of such a hospital the committee is without authority to hear charges filed against a practicing physician.

4. SAME—*revocation of license is an exercise of police power.* The revocation of a license to practice medicine is not intended as punishment for any offense but for the protection of the public by the police power of the State.

5. SAME—*statutory provisions for revocation of license do not violate due process of law.* The provisions of section 6 of the Medical Practice act of 1899, section 18 of the act of 1917 and section 60 of the Civil Administrative Code, in regard to the revo-

cation of licenses to practice medicine by the Department of Registration and Education, are not indefinite and do not violate the requirement of due process of law, as notice and a hearing are provided for, and in case of arbitrary action without notice or hearing the aggrieved party may have a review of the proceedings by *certiorari*. (*People* v. *Apfelbaum*, 251 Ill. 18, followed.)

6. SAME—*equity may enjoin hearing by unauthorized committee to revoke license.* A court of equity has jurisdiction of a bill filed by a practicing physician alleging that an unauthorized professional committee has begun the hearing of charges against him under section 60 of the Civil Administrative Code, and that unless restrained from conducting further hearings he will suffer irreparable injury by reason of the character of the charges and may unjustly suffer the revocation of his license.

7. CONSTITUTIONAL LAW—*due process of law does not necessarily imply judicial proceedings.* Due process of law does not necessarily imply judicial proceedings, and while orderly proceedings according to established rules which do not violate fundamental rights must be observed, there is no vested right in any particular remedy or form of proceeding, and a general law administered in its regular course according to the form of procedure suitable and proper to the nature of the case, conformable to fundamental principles of right and affecting all persons alike, is due process.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

MILLER & BURT, (ROBERT E. CANTWELL, JR., of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, (GEORGE E. DIERSSEN, ERWIN W. ROEMER, and ELMER M. LEESMAN, of counsel,) for appellees.

Per CURIAM: Appellant filed a bill for injunction in the superior court of Cook county against the director and assistant director of the Department of Registration and Education, the superintendent of registration, and members of a committee styled Professional Committee of Physicians, designated by the director of the Department of Registration and Education to hear and make report on

329—28

complaint filed against appellant to revoke his license as a physician and surgeon, seeking to restrain appellees from further consideration and hearing of evidence before the professional committee.

The bill alleges that appellant is a regularly licensed physician in Illinois and has been since March 31, 1917; that he had built up a large practice at the time the proceedings complained of were instituted against him; that a corporation was formed for the erection of a large hospital in Austin, Illinois, of which appellant had been selected as chief surgeon; that a personal enmity existed between appellant and Charles E. Humiston, a physician and surgeon practicing in the same community with him; that complaints of unprofessional conduct were filed against appellant; that appellee Austin M. Shelton, director of the Department of Registration and Education, designated appellees Malcolm L. Harris, L. C. Taylor, Gilbert Fitzpatrick, Arthur Geiger and W. H. Gilmore, all licensed physicians, as a committee to hear and make report on complaints against medical practitioners, embalmers and midwives, under the statutes of Illinois, relative to the revocation of licenses issued by the department. The bill further alleges that on Wednesday, April 25, 1923, appellant's solicitors received a telegram from Shelton that a hearing would be had on said complaints in writing on Monday morning, April 30, at 130 North Wells street, Chicago; that on the date designated appellant, with his solicitors, appeared in the office of the department at the above address; that there were present Shelton, as director of said department, and four members of the professional committee; that Shelton announced a hearing upon said charges would commence immediately; that appellant by his counsel protested against the hearing, and the professional committee denied his motion to dismiss the charges and denied his motion for a more specific statement of charges against him; that the hearings were conducted by

Malcolm L. Harris as chairman of the committee, who administered oaths to witnesses; that the committee permitted the introduction of a vast amount of untrustworthy hearsay testimony and testimony on matters not charged against appellant in the written charges, and that appellant had no opportunity to prepare a defense thereto; that newspaper reporters were permitted to attend the hearings, with the result that scandalous and defamatory stories about appellant were published in the papers, to his detriment and injury. Appellant also charges in the bill that he was expelled from the Illinois State Medical Society on complaint of Charles E. Humiston, a member of said society; that the executive body of said society is known as the council, and consists of three members; that Harris, Geiger and Gilmore, members of the professional committee, were members of the council of said society and voted to expel appellant. Appellant alleges in his bill that the professional committee was without jurisdiction to hear the charges; that the various specifications in the charges are vague and indefinite, and that so much of section 6 of the Medical Practice act of 1899, so much of section 18 of the act of 1917, and so much of section 60 of the Civil Administrative Code as confers on the Department of Registration and Education power to revoke licenses to practice medicine and surgery, are unconstitutional, depriving the holders of such licenses of due process of law. The bill alleges irreparable injury if defendants are not restrained from continuing with the hearing, and that by reason of their prejudice against appellant he believes they will report him guilty and recommend his license be revoked, and that the department will immediately revoke the same.

An amendment was made to the bill, by which it is alleged that the professional committee is not a lawfully constituted body, in that four members thereof are instructors or otherwise interested, directly or indirectly, in medical colleges or medical institutions in Illinois, in violation of

that part of section 60 of the Civil Administrative Code which provides that charges for the revocation of licenses of medical practitioners, embalmers and midwives shall be heard by five persons, all of whom shall be reputable physicians licensed to practice medicine and surgery in Illinois, no one of whom shall be an officer, trustee, instructor or stockholder, or otherwise interested, directly or indirectly, in any medical college or medical institution.

The six specifications attached to the bill as exhibits are:

(1) That appellant on August 26, 1920, contrary to the ethics of his profession, with intent to discredit a lawfully practicing and licensed physician, Chester W. Trowbridge, willfully and maliciously stated to the husband of one of Trowbridge's patients that he had seen an operation performed by Trowbridge and had seen parts of the body and certain organs of the patient removed that were in a healthy condition, and appellant offered to pay the laboratory tests if cancer were shown and if the husband said nothing about it.

(2) Section 6 of chapter 2 of the principles of ethics adopted by the American Medical Association, that "it is unprofessional for a physician to assist unqualified persons to evade legal restrictions governing the practice of medicine," is set out, and charges that appellant, in violation of said section, assisted R. W. Chilcote to evade legal restrictions governing the practice of medicine by telling him what to do to treat a patient he had for a disease of the eye.

(3) That appellant, on or about March 3, 1921, appeared before the board of directors of the West Suburban Hospital Association, owning and operating a hospital in Oak Park, Illinois, and then and there falsely and maliciously stated and represented to the board of directors that Charles E. Humiston, a licensed and practicing physician and surgeon in good standing, had taken the records and history sheet from the hospital and had it changed and re-written to show that appellant had performed a crimi-

nal abortion, and that appellant had charged Dr. Humiston with forging or causing said history sheet to be changed; that appellant had wrongfully sought to induce James Houloose to write the board of directors that he had made certain supposed interlineations or changes in the history sheet at the request of Dr. Humiston. This specification charges that appellant had made these false statements and misrepresentations to said board of directors for the purpose of attempting to sustain false and unwarranted charges against Dr. Humiston.

(4) That prior to April 11, 1922, the appellant was a member of the Chicago Medical Society; that on said date the Ethical Relations Committee of that society found charges of unprofessional and unethical conduct against appellant to be proven and expelled him from the society; that the proceedings were fairly and honestly conducted, but that despite this fact appellant, in an appeal from said proceedings by him, impugned the motives of the physicians and surgeons and made false and unwarranted charges against the members of the committee.

(5) That in September, 1921, appellant, through ill-will, hatred and malice, approached and solicited divers persons to assassinate Dr. Humiston.

(6) That appellant, by false promise of marriage to Rose C. Keegan, induced her from time to time to give or loan to him large sums of money, aggregating between $10,000 and $12,000, and had filed a petition in bankruptcy giving a false address of Rose Keegan.

A temporary injunction was granted, answers were filed, and the cause was referred to a master, who found in favor of appellant. Exceptions to the master's report were sustained by the superior court and a decree entered dismissing the bill for want of equity. An appeal has been taken to this court.

The appeal is based on the following grounds: First, that the professional committee of five physicians had no

authority, under the statute, to proceed with the hearing
against appellant; second, the provisions of the acts of 1899
and 1917, and the act of 1887, as well as a portion of sec-
tion 60 of the Civil Administrative Code authorizing revo-
cation of physicians' licenses for unprofessional or dishon-
orable conduct, are invalid; third, that none of the acts
charged in the complaint against appellant constituted un-
professional or dishonorable conduct within the meaning
of that phrase as employed in the various Illinois medi-
cal practice acts; fourth, that the conduct of the hearing
against appellant by appellees deprived him of due process
of law.

Section 60 of the Civil Administrative Code (Hurd's
Stat. 1917, p. 617,) designates the powers of the Depart-
ment of Registration and Education in carrying out the
various statutes relating to professions, trades and occupa-
tions coming within the scope of its jurisdiction. The first
subdivision authorizes the department to conduct examina-
tions to ascertain qualifications and fitness of applicants to
exercise the profession sought to be entered. The second
prescribes rules and regulations for an impartial method
of examination of candidates. The third deals with the
character of schools, colleges or universities, etc. The
fourth empowers the department to adopt rules for pro-
viding for and establishing a uniform and reasonable stand-
ard of maintenance, instruction and training to be observed
by all schools for nurses, etc. The fifth establishes a stand-
ard for preliminary education essential to the admission to
a school, college or university. The sixth authorizes the
department to "conduct hearings on proceedings to revoke
or refuse renewal of licenses, certificates or authorities of
persons exercising the respective professions, trades or oc-
cupations, and to revoke or refuse to renew such licenses,
certificates or authorities." The seventh authorizes the
department to formulate rules, when required, pertaining
to matters under their authority, and provides as follows:

"None of the above enumerated functions and duties shall be exercised by the Department of Registration and Education, except upon the action and report in writing of persons designated from time to time by the director of registration and education to take such action and to make such report, for the respective professions, trades and occupations, as follows," etc. This subdivision then provides for a committee on matters pertaining to veterinary practitioners, horse-shoers, architects, structural engineers. Then appears the following as to how the committee shall be constituted: "For the medical practitioners, embalmers and midwives, five persons, all of whom shall be reputable physicians licensed to practice medicine and surgery in this State, no one of whom shall be an officer, trustee, instructor or stockholder or otherwise interested directly or indirectly, in any medical college or medical institution. For the purpose of preparing questions and rating papers on practice peculiar to any school, graduates of which may be candidates for registration or license, the director may designate additional examiners whenever occasion may require."

Appellant contends that four of the five members of the professional committee were at the time of the hearing connected with one or more medical institutions in such a manner as to make them ineligible to serve on the committee. Appellees reply that while members of the committee are connected with various hospitals in the city of Chicago, a hospital is not a medical institution. The first question, therefore, arising on this branch of the case is whether a hospital is a medical institution as that term is used in the act. Appellees say that the term as used refers only to medical schools, and that the doctrine of *ejusdem generis* must be applied. The statute provides for such a committee not only in cases where charges are filed, but a committee of such or similar character is required wherever the department functions under the powers granted by section 60 of the Civil Administrative Code, pertaining to the various

professions, trades or occupations. It seems apparent that in requiring that in the consideration of matters affecting physicians none of the committee of five appointed "shall be an officer, trustee, instructor or stockholder or otherwise interested directly or indirectly in any medical college or medical institution," the legislators intended to free the work of such committee from any influence arising out of the interest of any member of such committee in any medical school or medical institution.

Appellees say that a hospital cannot be considered a medical institution in the sense in which that term is used in the act; that a hospital is not a school or medical college and therefore not a medical institution. An institution, according to the definition of standard lexicographers, is an established, organized society or corporation; an establishment of a public character or one affecting a community. The term "medical" is defined as of or pertaining to or dealing with the healing art or the science of medicine. Therefore a medical institution is an association or corporation having to do or conducted in connection with the science of medicine or healing. In the strict sense, therefore, it cannot be doubted that a hospital is a medical institution. If we were to apply the doctrine of *ejusdem generis,* the medical institution referred to in the act is to be considered an institution where the science of medicine and healing is taught. Under such application it becomes apparent that the legislature intended that a hospital which instructs in the science of medicine or healing comes within the definition of a medical institution.

Dr. M. L. Harris, chairman of the committee appointed by the Department of Registration and Education concerning the charges made against appellant, is shown by his testimony to be connected with different hospitals in the city of Chicago, one of which is the Chicago Polyclinic. This, according to the witness, is a graduate school with a hospital and dispensary. Lectures are there given to gradu-

ate licensed doctors coming from within and without the State. Dr. Harris is shown by his testimony to be a professor of surgery at the Chicago Polyclinic and to lecture there. This institution is referred to in the record as a medical college. Dr. Gilbert Fitzpatrick, a member of the committee, is also connected with various hospitals, including the Henrotin Memorial Hospital and the Chicago Polyclinic, as a lecturer, when called upon. Dr. Arthur H. Geiger, another member of the committee, was also connected with the Henrotin, the Polyclinic, the Chicago General Hospital, and others, and it appears from his statement in the record that he is an instructor in the Polyclinic Post-Graduate School. Dr. L. C. Taylor testified that he resides at Springfield; that he is on the staff of the Springfield Hospital and lectures before the school for nurses and not for students or physicians.

It appears from the evidence that the Chicago Polyclinic (otherwise in the record called the Chicago Polyclinic Post-Graduate School) is a post-graduate college having a regular curriculum and conducting courses in post-graduate instruction in the science of medicine. Dr. Fitzpatrick is shown to be connected therewith as a lecturer and instructor. Dr. Geiger is also shown to be an instructor in the institution. Dr. Harris testified that he was a professor of surgery at the Chicago Polyclinic and an officer of the institution. General hospitals not giving courses in medical instruction do not come within the purview of the act, nor do medical societies or hospitals in which instructive lectures may from time to time be read constitute medical institutions where medical science is taught as contemplated by the act. The act must, however, by its most restricted application be held to apply to medical institutions in which courses of instruction, whether post-graduate or undergraduate, are given. The Chicago Polyclinic Post-Graduate School (or Chicago Polyclinic) is an institution where post-graduate courses are given in the science of medicine, and

is a medical institution within the meaning of the language and intent of the act. Three of the committee hearing the charges against appellant were at the time of such hearing so connected with the Chicago Polyclinic as to disqualify them for service in that capacity. It follows that the committee was without authority to proceed further with the hearing of those charges. This being so, the chancellor erred in refusing to issue the injunction as prayed.

Counsel urge that so much of section 6 of the Medical Practice act of 1899, of section 18 of the act of 1917, and of section 60 of the Civil Administrative Code as confers upon the Department of Registration and Education the power to revoke licenses to practice medicine and surgery is unconstitutional, as depriving the holders of such licenses of due process of law. The grounds urged as supporting that claim are, that the act does not provide for notice, calling of witnesses and review by a court. Section 6 of the Medical Practice act of 1899 (Hurd's Stat. 1915-16, p. 1703,) provides that the State Board of Health may revoke a license to practice medicine and surgery where the licensee is convicted of the practice of criminal abortion, or who has by false, fraudulent representation of his profession obtained or sought to obtain money or other things of value, or who advertised under a name other than his own, "or for any other unprofessional or dishonorable conduct." This section contains a proviso, as follows: *"Provided,* that no certificate shall be revoked or refused until the holder or applicant shall be given a hearing before the board." Section 18 of the Medical Practice act of 1917, (Hurd's Stat. 1917, p. 1921,) under which proceedings against the appellant were instituted, is in substance the same as the provision just quoted. It provides: "No license or certificate shall be revoked or refused until the holder thereof shall have been given a hearing before the Department of Registration and Education." The provisions of section 60 of the Civil Administrative Code of

1917 material to the consideration of this case are hereinbefore set out.

In *People* v. *Apfelbaum*, 251 Ill. 18, section 6 of the act of 1899 was attacked. It was there held that the granting and revocation of a license to practice medicine is not the exercise of judicial power as that term is understood in referring to the distribution of the powers of government; that while in the administration of the law the State Board of Health necessarily exercises discretion and judgment and to that extent its action is judicial in character, it is not an action for a court nor an action appropriate for a court. A revocation of a license to practice medicine is not intended as punishment for any offense but for the protection of the public by the police power of the State. Due process of law does not necessarily imply judicial proceedings. Orderly proceedings according to established rules which do not violate fundamental rights must be observed, but there is no vested right in any particular remedy or form of procedure. A general law administered in its regular course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental principles of right and affecting all persons alike, is due process. (*People* v. *Apfelbaum, supra; Due* v. *Hoboken Land and Improvement Co.* 18 How. 272; *Ex parte Wall*, 107 U. S. 265.) The power given to the State Board of Health is not arbitrary or beyond the investigation of the courts. (*People* v. *McCoy*, 125 Ill. 289.) It cannot, from mere caprice, without cause revoke a certificate fairly issued upon sufficient evidence of the applicant's qualifications. The statute requires a hearing before a certificate can be refused or revoked, and necessarily implies notice of such hearing and an opportunity to defend. The power to revoke a license cannot be exercised except upon action and report in writing of five reputable citizens licensed to practice medicine and surgery, selected by the director of registration and education to conduct a hearing on the charges

preferred. (*Blunt* v. *Shepardson,* 286 Ill. 84.) Where there is no notice or hearing and a record thereof preserved the party aggrieved may have a review of the proceedings by *certiorari. Blunt* v. *Shepardson, supra.*

It is also argued that the Medical Practice acts involved here are indefinite, and that the terms "unprofessional" or "dishonorable conduct" cannot be made the basis of an action of the department in revoking a license. This objection was urged in *People* v. *Apfelbaum, supra,* and was decided contrary to the contention of appellant here.

As the decree must be reversed for the reason that the members of the committee designated to hear the complaint against appellant are not eligible to so act, it is not necessary to pass upon further objections raised. It is alleged in the bill that the complaints against appellant were still pending at the time the bill was filed. While completed acts of the committee in the discharge of duties fixed by the statute cannot be declared invalid, as the members undoubtedly constituted a *de facto* committee, the injunction sought in this case is against the committee proceeding further with this hearing. This is a direct attack on the authority of the committee to further act in the premises.

Appellees question the jurisdiction of a court of equity in this case. The prayer of the bill is that the so-called committee be restrained from holding further hearings as to the matters involved and the charges against appellant; that by reason of the character of the charges and the attitude of the committee appellant will suffer irreparable injury. The allegations of the bill raise issues proper to be considered by a court of equity. *State Board of Health* v. *Ross,* 191 Ill. 87.

The decree of the superior court is reversed and the cause is remanded, with directions to grant the relief prayed in the bill.

*Reversed and remanded, with directions.*