STEFAN STOJANOFF, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 77-1837

Opinion filed May 8, 1979.—Rehearing denied June 19, 1979.

Steward D. Spitzer, of Bieber & Spitzer, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Gregory G. Lawton, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Stefan Stojanoff appeals from an order of the circuit court affirming the decision of defendant Illinois Department of Registration and Education (hereinafter "Department") revoking plaintiff's license to practice medicine. Plaintiff denies the power of the Director of the Department (hereinafter "Director") to revoke his license absent a review

of the evidence and recommendation by a peer committee pursuant to section 17.10 of the Medical Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 16b.10) (hereinafter "Act"), and further alleges a lack of substantial evidence to support the Department's decision.

For the reasons stated below, we reverse and remand with directions.

On November 21, 1975, 32 days after the Department served its amended complaint on plaintiff, the General Assembly amended the Act and provided for creation of the Illinois State Medical Disciplinary Board (Ill. Rev. Stat., 1976 Supp., ch. 91, par. 16a—2 et seq.) (hereinafter "Board"). Nominally a new body, the Board had essentially the same composition as the Medical Examining Committee (hereinafter "Committee") provided for under prior law (Law of July 25, 1945, 1945 Ill. Laws 990, 994, §17a (amended 1975); Ill. Rev. Stat. 1975, ch. 127, par. 60a), and as before was empowered to conduct license revocation or disciplinary hearings and make written findings and recommendations to the Director.[1]

Before receiving a license to practice medicine in Illinois a physician must pass an examination to the satisfaction of the Department under section 3 of the Act (Ill. Rev. Stat. 1975, ch. 91, par. 3). Since 1968 the Department has administered the Federation Licensing Examination (hereinafter "Examination") to doctors in order to determine eligibility for licensing. Scoring is done by a national board; scores are reported to the Department and eventually to the Board, which then determines eligibility on the basis of the aforesaid scores. Under Rule V.3 of the Department, standards for licensing require that the applicant receive an overall average score of 75 and a minimum score of 60 in each subject area. At the time plaintiff sat for the Examination in June of 1974, however, the Committee had evidently developed the practice of reviewing the files of certain license applicants at their request and discretionarily adjusting their inadequate scores to passing level.

Plaintiff received an overall score of 73.2. Prior to this, plaintiff had taken the Examination on six different occasions without achieving a passing score. In its amended complaint the Department invoked section 3 of the Act and the revocation section, which provides for revocation of the license of any person for violation of any provision of the Act or of the administrative rules and regulations. (Ill. Rev. Stat. 1975, ch. 91, par. 16a12.) The amended complaint alleged inter alia that: plaintiff had been issued a license by unauthorized action instigated by John B. Hayes, then superintendent of the Department; plaintiff was not then and had never been qualified to practice medicine in Illinois as a result of his

---

[1] In 1977, the Medical Practice Act was placed in the newly designated Professions and Occupations chapter of the Illinois Revised Statutes with no other change (Ill. Rev. Stat. 1977, ch. 111, par. 4401 et seq.).

failure to achieve a passing score on the Examination at any point; and these facts constituted grounds for revocation of plaintiff's license.

On the Committee's recommendation, a hearing officer was designated by the Director to take evidence and conduct the hearing in plaintiff's case, which began on April 30, 1976. Evidence was adduced principally from the testimony of three witnesses: Dr. Paul Tullio, a member of the Committee; Beverly Mason, acting supervisor of the Department's medical section and Hayes' assistant; and Superintendent Hayes.

According to Tullio, on August 22, 1974, he was told by Hayes that plaintiff, who had failed the Examination two months earlier, was suffering from cancer and would be unable to study or sit for another Examination; Hayes suggested that Tullio present plaintiff's records to the Committee when it met later that day and "* * * see if they could make some kind of exception as to him." At the Committee's luncheon meeting, Tullio gave to Dr. Schnepp, chairman of the Committee, papers reciting plaintiff's Examination scores and medical history, and related Hayes' request that the scores be given "consideration" since plaintiff couldn't take another exam. The Committee decided to defer taking any action pending verification and inspection of plaintiff's entire file and medical history.

Ms. Mason, who also attended the Committee meeting, testified that Schnepp told the other Committee members Tullio had been asked to have them review plaintiff's records because he was dying of cancer and couldn't take the Examination again. Schnepp then suggested that the Committee should have a letter verifying these facts, whereupon the other members agreed. Ms. Mason saw Hayes shortly after the meeting ended and told him the Committee wanted a letter concerning plaintiff's health. As supervisor it was her duty to take minutes of the meeting; she did so, but later destroyed them out of bitterness over her own removal from the medical section of the Department in the following month.

According to Ms. Mason, on the following day she told Hayes she had not "taken care of" plaintiff's Examination scores because of the Committee's requirement of a verification letter. Hayes told her that while Tullio confirmed the Committee wanted a letter, Tullio directed that a license was to be issued to plaintiff in the meantime. Hayes then instructed Ms. Mason to change plaintiff's June Examination score to a passing level. She changed his score in clinical competence from 74.3 to 77.0, which was calculated as resulting in an overall average score of 75.0.

Ms. Mason testified that Hayes questioned her on later occasions as to whether the acceptance letter customarily sent to those applicants passing the Examination had been sent to plaintiff. She reminded him she had not yet received the verification letter requested by the Committee. He

assured her the letter would be forthcoming and urged her to send plaintiff his acceptance letter without delay, which she did. Ms. Mason never received the verification letter, and Hayes later told her he heard plaintiff had died.

Hayes confirmed the conversation of August 22, 1974, with Tullio concerning plaintiff, but testified that he requested the exception at the behest of one Nancy Schlaes of the Governor's office, who told him plaintiff was being considered for an administrative position for which licensure was a prerequisite. Hayes suggested to Tullio that some combination of plaintiff's past and present Examination scores might result in a passing grade.

Hayes testified that he arrived at the close of the Committee meeting and Schnepp told him that the Committee had recommended plaintiff be issued a license. When told by Tullio that it "might not be unwise" to confirm plaintiff's condition, Hayes suggested a personal interview but was advised such would be unnecessary since the Committee had "acted"; however, to satisfy Dr. Schnepp a letter was requested. Hayes denied ever instructing Ms. Mason to alter plaintiff's Examination results and testified that he did confirm plaintiff's "health problem" by telephone through his secretary.

Dr. Izak Goldstein, plaintiff's personal physician, testified that he treated plaintiff in September of 1974 for abdominal pain, but that at no time did he have cancer.

In his report, the hearing officer found, *inter alia*, that no firm action was taken by the Committee relative to plaintiff and that Ms. Mason, acting under Hayes' direction and without the approval or authority of the Committee, falsified Department records to indicate that plaintiff had passed the June 1974 Examination when he had in fact failed. He concluded that plaintiff was issued a medical license improperly and recommended its revocation as if it were never issued. The Director adopted the findings, conclusions and recommendations of the report in revoking plaintiff's license on December 15, 1976. The order of revocation recited that a hearing officer was appointed in place of the Committee because of "allegations of improprieties" by members of the Committee raising doubts as to their ability to fairly hear the case, and because on March 10, 1975 "there was no Medical Disciplinary Board," plaintiff's case having begun to be heard before its creation. The order further provided that the revocation be deemed technical in nature and not construed as a violation of the practice of medicine.

Plaintiff filed his complaint for administrative review, claiming that no statutorily constituted committee or board had ever reviewed the findings or made recommendations as required by the Act, and that the decision of the Department was contrary to the manifest weight of the

evidence. On September 16, 1977, the trial court ruled that the decision of the Department was supported by substantial evidence "and * * * in accordance with the law," and that plaintiff had received a full and impartial hearing. No ruling or comment was made directly by the court upon the Department's alleged statutory violations.

■■ Plaintiff argues that section 17.10 of the Act requires the proposed revocation of his license be first reviewed by a duly constituted examining board. This section reads, in part, as follows (Ill. Rev. Stat. 1975, ch. 91, par. 16b.10):

> "*None of the disciplinary functions, powers and duties enumerated in this Act shall be exercised by the Department except upon the action and report in writing of the examining committee* * * *.*
>
> The action and report in writing of a majority of the committee designated is sufficient authority upon which the Director may act." (Emphasis added.)

The Department avers that the unusual circumstances of the case required the Director to bypass the then standing committee and that, for want of an alternative review procedure specifically provided for in the Act, the use of the hearing officer alone was proper. The absence of peer review, defendants say, is not prejudicial to plaintiff since the issues were simple questions of fact not requiring medical expertise for their resolution. The plain meaning of section 17.10 and its predecessors under previous Acts leaves no doubt that the Director is without authority to perform his disciplinary functions, powers and duties under the Act except upon the action and report in writing of the Board. (*People ex rel. Goldfarb v. White* (1964), 54 Ill. App. 2d 483, 203 N.E.2d 599; *Schyman v. Department of Registration & Education* (1956), 9 Ill. App. 2d 504, 133 N.E.2d 551.) The Act makes no exceptions for simple issues of fact. *Farney v. Anderson* (1978), 56 Ill. App. 3d 677, 372 N.E.2d 151, cited by the Department in this context, is inapposite, as the court there insisted upon expert medical testimony in a license revocation proceeding wherein Board review did occur.

As to defendants' claim that no alternative procedure was available other than the appointment of a hearing officer and the bypassing of Board review, section 17.10 provides for the appointment of "other examiners" by the Director for a re-examination or rehearing "[w]henever [he] is satisfied that substantial justice has not been done * * *" in the initial proceeding (Ill. Rev. Stat. 1975, ch. 91, par. 16b.10). Further, as plaintiff urges, in *Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722, the supreme court found error in the Department's refusal to appoint a different committee to conduct a license revocation hearing where charges of bias were placed against the

standing committee, and in *Schyman*, the court approved the Department's appointment of a special examining committee to replace the statutorily appointed members. Even then, under section 17.10 the Director need not act according to the findings of the Board provided reasons for his taking any contrary position or action are filed.

■■ Plaintiff's license being in the nature of a property right, due process standards apply to proceedings to revoke it. (*Burden v. Hoover* (1956), 9 Ill. 2d 114, 137 N.E.2d 59; *Bruns v. Department of Registration & Education* (1978), 59 Ill. App. 3d 872, 876, 376 N.E.2d 82.) The hearing afforded plaintiff in the instant case, absent Board review, did not meet the foregoing standards. Accordingly, we reverse and remand with instructions that the report of the hearing officer be submitted to the Board or other duly constituted examining committee for review and recommendation to the present Director.

Notwithstanding the foregoing, we will address ourselves to certain factual issues identified by the parties at the hearing that was granted and its bearing upon plaintiff's status pending further administrative proceedings. We follow this procedure because the evidence submitted to the hearing officer and Director raises a substantial question as to whether plaintiff's score was ever in fact raised by action of the Committee, and issuance of his license approved by it. Plaintiff's reliance upon the agency's previous practice of raising certain failing grades as germane to the revocation decision, citing *People ex rel. Cinquino v. Board of Education* (1967), 86 Ill. App. 2d 298, 307, 230 N.E.2d 85, is misplaced. In *Cinquino* the court reversed an agency revocation of that plaintiff's placement on a Ph.D. compensation level when it determined, contrary to its prior policy, that his foreign degree was not the equivalent of a Ph.D. The basis for the reversal was that the agency had abruptly changed its policy to Cinquino's detriment. The raising of grades in the present case was discretionary with the Committee. From the evidence, plaintiff's revocation might well be considered by the Board as having been grounded in the failure of the Committee ever to approve plaintiff's licensure, by raising grades or otherwise, rather than in a change in policy. An agency may bind itself by its practice with respect to an ambiguous rule; however, the holding of *Cinquino* is expressly limited to cases wherein "* * * plaintiff [is not] so placed through fraud, duress, or mistake, and [where] the Board's initial action [is] proper." (86 Ill. App. 2d 298, 307.) The findings in the case before us may be interpreted by the Board as factually distinguishable from *Cinquino*, if it concludes, as did the hearing officer and Director, that the actions engaged in by Dr. Hayes and his assistant were not authorized by the Committee.

Plaintiff maintains that a revocation would nevertheless be improper since there was no evidence of fraud or misrepresentation by him, citing

*Schireson v. Walsh* (1933), 354 Ill. 40, 187 N.E. 921, for the proposition that "* * * some positive, willful or intentional act [must] be committed on the part of the registrant which actively induced the issuance of his license" for revocation properly to obtain. (354 Ill. 40, 54.) *Schireson* in this context specifically construes the statute then in effect, which recognized the absence of good moral character as a ground for revocation of a physician's license; it has no bearing upon the instant case with respect to plaintiff's lack of personal involvement in the process by which the license was issued.

■■ In defining the term of a statute, it must be analyzed in light of its intended purpose. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) The predominant purpose in licensing professions is to prevent injury to the public by assuring professional competence, as well as honesty and integrity. (*Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198; *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968, 361 N.E.2d 626.) In asserting want of fault, plaintiff presumes that license revocation is necessarily punitive; however, in construing successive acts regulating the practice of medicine the courts have regarded revocation provisions not as punishment for any offense, but for the protection of public health through the police power of the State. (*Ramsay v. Shelton* (1928), 329 Ill. 432, 160 N.E. 769; *People ex rel. State Board of Health v. Apfelbaum* (1911), 251 Ill. 18, 95 N.E. 995; *Kaplan; People ex rel. Schutz v. Thompson* (1945), 325 Ill. App. 95, 59 N.E.2d 494.) A revocation proceeding under the Act thus does not require culpability by the respondent in every case.

■■ In *Torriente v. Stackler* (7th Cir. 1976), 529 F.2d 498, the Seventh Circuit, construing the 1975 Act, held that a complaint charging an applicant with having received a letter advising her she had passed the examination and would receive a medical license " "* * * through accident, artifice, or some other means * * *' "(529 F.2d 498, 499) stated grounds for which her license could be revoked. As in the case before us, the plaintiff in *Torriente* did not pass the Examination, nor, as here, was there any allegation of fraud or misrepresentation on her part. Nevertheless, her failure to obtain a passing grade on the Examination, if proved, could be held to constitute a violation of the Act. In the case at bar plaintiff's failure in this respect is uncontested. In light of the well established purpose of the Act, we find *Torriente* persuasive and applicable to plaintiff here.

Plaintiff contends further that any doubt raised by the conflicting evidence as to whether the Committee approved his licensure should be resolved in his favor according to the evidentiary principle of *omni praesumuntur contra spoliatorem* (all things are presumed against a despoiler) based upon Ms. Mason's destruction of the written minutes of

the Committee meeting while still in the Department's employ, quoting incidental mention of this principle in *People v. Spaulding* (1923), 309 Ill. 292, 141 N.E. 196, and *Appleton Electric Co. v. Advance-United Expressways* (7th Cir. 1974), 494 F.2d 126. In *Spaulding*, the court remarked that intentional suppression, fabrication or destruction of evidence "* * * may be shown as a circumstance indicating that the party's cause is an unrighteous one. [Citations.]" (309 Ill. 292, 306) in holding that evidence of defendant's attempt to destroy or conceal evidence of his crime was admissible for the purpose of showing consciousness of guilt. *Appleton* involved a class action suit wherein the Seventh Circuit found no justification for the unavailability of defendants' records when "* * * [they] were given adequate notice that refunds [to members of the class] might ultimately be necessary * * *." (494 F.2d 126, 139.) Arising from factual situations much at variance with the one before us, these cases also reflect the rule that the unfavorable presumption is not conclusive against the withholding or destroying party; rather, the failure to produce is a circumstance to be considered by the trier of fact. (*Elam v. Elam* (1920), 294 Ill. 96, 128 N.E. 324; *Haynes v. Coca Cola Bottling Co.* (1976), 39 Ill. App. 3d 39, 350 N.E.2d 20.) The evidence reflects and both parties acknowledge that Ms. Mason destroyed the minutes for personal reasons unconnected with plaintiff, and her testimony as to what occurred at the Committee meeting in regard to plaintiff was corroborated by Dr. Tullio. The Board may choose to consider these facts as overcoming any contrary presumption raised by her destruction of the minutes.

In *Torriente*, the court makes reference to "* * * the overriding public interest in seeing that only qualified persons be licensed to practice medicine in Illinois [citation]" in holding that, even when regarded as a pretrial suspension, the Department's withholding of that plaintiff's certificate of license to practice medicine pending determination of "* * * whether, in truth and in fact, the plaintiff received a failing grade or a passing grade on the examination * * *" (529 F.2d 498, 502, 501) was justified. We find that interest no less compelling here, particularly in view of the history presented to us in this case. Accordingly, we direct that the revocation of plaintiff's license remain in effect pending the conclusion of administrative proceedings pursuant to this opinion.

Reversed and remanded.

STAMOS, P. J., and PERLIN, J., concur.